IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02972-MEH

CODIS WEST MIMS, SR.,

    Plaintiff,

v.

T-MOBILE USA, INC.,

    Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendant's Motion to Reconsider the Court's Order Denying in Part Defendant's Motion for Summary Judgment (ECF 84) and Supplemental Brief (ECF 90). The Motion is fully ripe for review, and the Court heard oral argument on April 8, 2021. For the following reasons, the Motion is granted.

## **LEGAL STANDARD**

    Fed. R. Civ. P. 54(b) permits revision "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." That rule is read to permit motions for reconsideration. *Price v. Philpot*, 420 F.3d 1158, 1167, n.9 (10th Cir. 2005) (stating that every order short of a final decree is subject to reopening at the judge's discretion). A court otherwise has the "plenary power to revisit and amend interlocutory orders as justice requires." *Beyer Laser Ctr., LLC v. Polomsky*, No. 16-cv-03099-MEH, 2019 WL 5549160, at *2 (D. Colo. Oct. 25, 2019). Motions for reconsideration generally are disfavored, and relief is limited to certain situations such as "the need to correct clear error or prevent manifest injustice," *id*., or for new,

previously unavailable evidence, *Weingarten v. Auto-Owners Ins. Co.*, No. 17-cv-01401-MEH, 2018 WL 2561042, at *2 (D. Colo. April 17, 2018). However, a motion to reconsider is not the appropriate vehicle "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

## ANALYSIS

Plaintiff sued Defendant, his former employer, alleging that it failed to accommodate his disabilities, fired him because of his disabilities, and retaliated against him for his use of FMLA leave. Defendant moved for summary judgment on all three claims. The Court's ruling left only the termination claim at issue.

Defendant reiterates its claim that summary judgment is necessary on the termination claim, in light of Plaintiff's Social Security Disability Insurance ("SSDI") application and benefits award. Defendant received those records on February 26, 2021, well after the summary judgment ruling on September 30, 2020. It was not until that late stage in the litigation when it received them despite its repeated requests. Defendant first asked for Social Security records in October 2019. ECF 84-1 at 1. At his deposition on February 5, 2020, Plaintiff testified that he could not remember when he had filed for Social Security disability benefits but that he still was awaiting the determination. ECF 41-1 at 5. In October 2020, Defendant renewed its request for the records. ECF 84-1 at 44. The Social Security Administration ("SSA") rendered its favorable decision soon afterwards, on October 30, 2020. ECF 84-1 at 133. At the Final Pretrial Conference on January 12, 2021, the Court ordered Plaintiff to produce them. ECF 78. On February 26, 2021, Defendant received the administrative record consisting of Plaintiff's SSDI application, medical records, and award decision. Because Defendant did not receive it until recently despite ongoing efforts to obtain it, the SSDI administrative record constitutes the kind of new evidence for which

2

reconsideration of the prior summary judgment ruling may be sought. *Weingarten*, 2018 WL 2561042 at *2.

The newly produced SSDI records are relevant to Plaintiff's ADAAA termination claim. To survive summary judgment, Plaintiff first must make a *prima facie* showing that he (1) is disabled as defined by 42 U.S.C. § 12102(1); (2) is qualified to perform the essential functions of his job with or without accommodations; and (3) was terminated under circumstances which give rise to an inference that it was based on his disability. ECF 49 at 17. The summary judgment ruling turned on the question of whether his physical presence in Colorado was an essential function to serving as the Regional Field Loss Prevention Manager for Defendant's Colorado stores. Also at issue was whether Defendant's decision to fire him for job abandonment was pretext.

The termination claim's analysis did not directly concern whether his medical condition impaired his ability to perform his job or whether Defendant failed to make any accommodation for them. Nevertheless, the SSDI records are relevant to the remaining termination claim. First, the summary judgment ruling rested on the assumption that, as Plaintiff argued in his response brief, he could perform the essential functions of the job "with and without accommodation." ECF 49 at 16. The Court also found as an undisputed material fact that "[e]xcept for his physical presence in Colorado, [he] was able to perform the essential functions of his job when he was able to see his physicians and receive his prescribed medications." *Id.* at ¶ 36. However, if Plaintiff could not perform the job in the first place, then the questions about Defendant's in-state residence requirement and its "no show" termination policy would be moot. Second, Plaintiff relied on certain statements by his supervisor about his medical condition as evidence of a discriminatory motive for firing him. He cited comments about whether Colorado's climate is conducive for his sacroid condition, whether his leg swelling will permit him to travel between store locations, and

3

while making those drives, whether his retinopathy increases the risk of motor vehicle accidents (and thereby increases Defendant's risk of liability). If those (and other) medical conditions instead were wholly disabling, then there would be no need to engage in a pretext analysis.

It is Plaintiff's burden to show his ability to perform the Regional Field Loss Prevention Manager job. Functions are "essential" to performing that job if they are fundamental and all other position holders must perform them. A court may consider the employer's judgment and the job's written description about what functions are essential. ECF 49 at 17–18. By contrast, the SSDI benefits award required a finding that Plaintiff can perform neither his past relevant work nor any other job that exists in significant numbers in the national economy. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999). In that way, Plaintiff's "sworn assertion" in his SSDI application that he is "unable to work" would appear to negate an essential element of his ADAAA case. *Id*. at 805.

The fact that the SSA found Plaintiff disabled does not automatically estop him from pursuing his ADAAA termination claim.[1] Neither may he "simply ignore the apparent contradiction" with its required elements. *Id*. at 806–07. In this situation, Plaintiff must explain the apparent inconsistency, and to defeat summary judgment,

> that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

*Id*. at 807. To be sufficient for *Cleveland* purposes, Plaintiff must do more than simply offer a contrary statement to support the ADAAA claim; rather he must *explain* the resulting contradiction or attempt to resolve the disparity. *Id*. at 806. Such an explanation is necessary to defeat summary

---

[1] These facts are distinguishable from cases such as *Montano v. Christmas by Krebs Corp*., 293 F. App'x 625, 630 (10th Cir. 2008), in which an SSA finding of disability postdated the employee's separation from the company.

judgment in Defendant's favor. *Aubrey v. Koppes*, 975 F.3d 995, 1013 (10th Cir. 2020) (quoting *Cleveland*); *Myers v. Knight Protective Serv., Inc.*, No. CIV-10-866-C, 2012 WL 123120, at *4 (W.D. Okla. Jan. 17, 2012).

Plaintiff has had two opportunities to offer the required explanation: in his Response (ECF 87) to Defendant's Motion for Reconsideration and at oral argument. Plaintiff points out that he applied for SSDI *after* he was fired. He submitted the application on July 3, 2019 (ECF 84-1 at 52), a year after his termination on July 11, 2018 (ECF 49 at ¶ 66). He says that without employment, he needed the financial support and health insurance that SSDI benefits would provide. While he may have sought SSDI benefits well after his termination, he claimed February 23, 2018 as the date when his medical condition rendered him wholly unable to work and the day when he actually stopped working. ECF 84-1 at 102. Plaintiff's alleged onset date, and the date on which the SSA determined be became disabled, coincides with the start of his FMLA leave and predates his termination by half a year.

Plaintiff furthers that if he "no longer had the benefit of health insurance coverage from Defendant, this would provide a plausible explanation for his" disability claim. ECF 87 at 4. That explanation only restates the inherent contradiction at issue. If he had health insurance during his FMLA leave period, then presumably he had access to the medical care that enabled him to perform the job. However, he told the SSA that he was unable to do that (or any) job since the start of his FMLA leave. Had he lost health insurance with the start of his FMLA leave, then he also lost the medical care to permit him to perform the job, as he alleges he could do in this lawsuit.

Plaintiff stresses how Defendant already knew about his SSDI application when it moved for summary judgment. However, it is not the fact of the application itself that is at issue. Had the SSA denied his application, there would be no contradiction for him to explain. *Cleveland*, 526

U.S. at 805 (noting how the pursuit of alternative forms of relief is permitted). The dispositive point is Plaintiff's sworn assertion—and the SSA's agreement—that he became unable to work on February 23, 2018. Without an adequate explanation of why, despite being completely disabled, he could perform the essential functions of his job, the disability award estops him from arguing in this action that he was qualified to perform the job after February 22, 2018. *Mathews v. Denver Newspaper Agency, LLP*, 649 F.3d 1199, 1208–09 (10th Cir. 2011).

Plaintiff refers to the SSDI administrative record as just another item of evidence about whether he can prove his ADAAA claim. In other words, Plaintiff argues that it simply creates a dispute of fact over the qualification element. However, as Defendant stresses in its Supplemental Brief (ECF 90), *Cleveland* does not leave it as a fact dispute for the factfinder to resolve. Rather, *Cleveland* emphasizes the need for the explanation to survive summary judgment.

The need for explanation is especially great given the facts of this case. The SSA found his disability to begin around the same time when he had taken FMLA leave because of worsening health. ECF 49 at ¶ 24. Plaintiff did not actually perform the job at any point afterwards. Plaintiff's first day back at work was six months later, on June 25, 2018, when he met his supervisor for re-orientation. *Id.* at ¶ 43. When the supervisor next spoke with Plaintiff four days later, he already was back in Texas, *id.* at ¶ 49, and the record does not indicate that he returned to Colorado thereafter. Indeed, his termination revolved around the issue of his absence from Colorado. The SSA's findings when considered in conjunction with Plaintiff's last six months of employment suggest a medical inability to perform the job that arose before his termination. Nothing on the face of the record suggests a way in which the SSDI benefits might be consistent with his ADAAA claim. This case does not present the situation in *Dorsey v. CHS, Inc.*, No. 15-cv-02735-RBJ, 2017 WL 1356093 (D. Colo. April 13, 2017), in which the plaintiff based his SSDI disability onset date

6

on the date of his termination and submitted evidence that suggested his employer may have exaggerated the extent to which his medical condition impaired his ability to do his job. There are no cases holding that a plaintiff's financial needs are a sufficient explanation for the inconsistency presented by competing SSDI and ADAAA claims. Only an explanation that relates to the plaintiff's continuing ability to perform his or her job functions can suffice.

## **CONCLUSION**

Courts will not "always find a discrimination claim barred because an individual applies for or receives social security benefits." *Myers v. Knight Protective Serv., Inc.*, 774 F.3d 1246, 1249 (10th Cir. 2014). "But when a plaintiff makes seemingly inconsistent statements . . . he must offer a 'sufficient explanation' for the apparent contradiction." *Id*. Here, Plaintiff does not address the dispositive issue directly. He does not explain how suing his employer for his July 11, 2018 termination is consistent with his finding of disability and award of SSDI benefits retroactive to February 23, 2018. What explanations he does provide are insufficient to resolve that contradiction. Without an adequate explanation, the SSDI record precludes him from establishing that he is qualified to perform the job, a required element of the ADAAA claim for which he carries the burden of proof. Consideration of the newly available SSDI record results in a different outcome to the summary judgment analysis.

Therefore, Defendant's Motion to Reconsider [filed March 19, 2021; ECF 84] is **granted**. As a result of that reconsideration, the Court finds Defendant entitled to summary judgment on Plaintiff's ADAAA termination claim. With no claims remaining, judgment is entered in Defendant's favor and this action closed.

SO ORDERED.

Dated at Denver, Colorado, this 13th day of April, 2021.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

8